IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 23-cr-00118-NYW

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.     DARION RAY SEXTON,

     Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Bryan David Fields, Assistant United States Attorney for the District of Colorado, and Maura White, Trial Attorney, Civil Rights Division, Criminal Section, and the defendant, Darion Sexton, personally and by counsel, Jamie Hubbard, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.  This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the Criminal Section of the United States Civil Rights Division (the government) and the defendant.

### I.    AGREEMENT

**A.**    **Defendant's Plea of Guilty:**

The defendant agrees to

(1)    waive indictment and plead guilty to an Information charging a violation of the Church Arson Prevention Act at 18 U.S.C. § 247(a)(1);

COURT EXHIBIT 1

(2)    waive certain appellate and collateral attack rights, as explained in detail below;

(4)    be liable for restitution to VICTIM CHURCH in an amount to be determined at sentencing;

**B.    Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and B. The government agrees to recommend a sentence at the bottom-end of the applicable guideline range for the criminal history and a total offense level calculated by the Court at sentencing.

The government further agrees not to bring other charges against the defendant based on information currently known to the government. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

**C.    Defendant's Waiver of Appeal:**

In exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in

connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)    the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 247(a)(1);

(2)    the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 24 (or 27, if the defendant is found to have engaged in prohibited conduct implicating USSG §§ 3C1.1 and 3E1.1, cmt. n.4 b); or

(3)    the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)    the defendant was deprived of the effective assistance of counsel; or

(3)    the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation

applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

## II.  ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of 18 U.S.C. § 247(a)(1) are as follows:

1.  The defendant defaced, damaged, or destroyed religious real property (here, the Victim Church), or attempted to do so;

2.  The defendant acted intentionally;

3.  The defendant acted because of the religious character of the property;

4.  The defendant's offense was in or affected interstate commerce;

5.  The offense included he use, attempted use, or threated use of an explosive, fire, or a dangerous weapon (here, a "Molotov cocktail")[1]

## III.  STATUTORY MAXIMUM SENTENCE

---

[1] Jury Instructions, *United States v. Hari*, 18-cr-00150-DWF-HB, ECF No. 327 (D. Minn, Dec. 9, 2020); *United States v. Roof*, 10 F. 4th 314, 403-04 (4th Cir. 2021)

The maximum sentence for a violation of Count One of the Information are: not more than 20 years' imprisonment; maximum term of supervised release three years; maximum fine $250,000; $100 mandatory victim's fund assessment fee; and restitution in an amount to be determined at sentencing.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.    STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct.

The relevant conduct in this case began on January 19, 2023 and ended on January 20, 2023. All of the facts described below occurred in the state and District

of Colorado.

Victim Church, the identity of which is known to the parties, was a church within the Wisconsin Evangelical Lutheran Synod ("WELS").  WELS is the third-largest Lutheran Church body in the United States, with congregations in all fifty states and several foreign countries. The Victim Church owned a building in Loveland, Colorado and operated in interstate commerce, purchasing items for its religious services from out of state, selling merchandise as part of fund-raisers, gathering donations from its congregation, and hosting weddings and other events. The building was a religious place accessible to and open to members of the public periodically and occasionally and was thus a place of public use.

At around 9:00 p.m. on January 19, 2023 the defendant, Darion Sexton, used Snapchat to send a friend a video selfie in which he stated "Yeah, I might go set a church on fire."  The friend responded "isn't that a hate crime" and then fell asleep.

At around 11:27 p.m. that same night the defendant walked from his residence to the front entryway of the Victim Church.  There, a doorbell camera on the front door captured the defendant, wearing a light-colored sweatshirt and pants and light-colored shoes, with his face obscured, throwing a flaming object at the Victim Church's front door. The object was a "Molotov cocktail," a destructive device manufactured by the defendant out of an empty bottle of Admiral Nelson Watermelon Rum that he had purchased two days before, stuffed with strips of denim from an old pair of jeans, and filled with gasoline.

The Molotov cocktail bounced off the front door of the Victim Church without

breaking. The defendant then picked it up and again chucked it at the front door. This time, the bottle shattered and engulfed the front door in flames.

The defendant threw another "Molotov cocktail" into the basement of the Victim Church.  To access the basement, he first threw another empty bottle of Admiral Nelson Watermelon Rum at an access window. After that window broke, he threw a plastic bottle, filled with gasoline and stuffed with more ripped denim, into the basement after lighting the denim on fire.

Loveland Fire Police Officers were dispatched at approximately 11:56 p.m. to a reported structure fire at the Victim Church.  When they arrived, they saw and extinguished an active fire at the front door. After entering the inside of the Victim Church, they observed that the second fire in the basement had been extinguished by emergency sprinklers.

Investigators recovered the broken glass rum bottle at the front door of the church, which smelled like gasoline. The outer pane of glass for the front door was broken, and there was smoke staining to the brick wall and doorframe. There was thermal damage consisting of melting to the rubber door sweep and composite material that comprised the door threshold.

The fire in the basement caused smoke staining to the concrete foundation wall and thermal damage to the wood framing of the basement window. A barred window on the northwest side of the building was broken. There was thermal damage, consisting of charring, to message boards and a pop-up canopy stored in the basement. A broken rum bottle was located on the basement floor. Fragments

from this bottle did not appear to have sustained any fire damage or discoloration. Additionally, a partially melted plastic bottle, which smelled like gas, was recovered from just inside the basement window.

The defendant stipulates and agrees that he targeted the Victim Church because of its religious character and that he intended to destroy the church by throwing two Molotov cocktails inside of it. He further admits that his attack on the Victim Church was in or affected interstate commerce: the defendant purchased the items used to manufacture the Molotov cocktails at various retail establishments operating in interstate commerce and his attack disrupted and interfered with the interstate commercial activity of the Victim Church.

## VI.   ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an

independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a)  Under USSG § 2H1.1(a), cross-referencing § 2K1.4(a)(1)(B), the base offense level is 24 because the defendant attempted to destroy a place of public use.

b)  Under USSG § 3A1.1 the offense level is increased by 3 because the defendant stipulates and agrees that the Victim Church was selected as the object of the offense because of its actual and perceived religious character. The adjusted offense level is **27**.

c)  Provided the defendant does nothing inconsistent with acceptance of responsibility between the date of the change of plea hearing and the date of the sentencing hearing, the Defendant should receive a 2-level downward adjustment, pursuant to USSG § 3E1.1(a). If the defendant has accepted responsibility described above, the government agrees that an additional 1-level downward adjustment would be appropriate pursuant to USSG § 3E1.1(b) because the defendant assisted authorities by providing timely notice of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. The resulting total offense level is **24**.

d)  The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions.  The parties believe the defendant is in criminal history category I.

e)  The career offender/criminal livelihood/armed career criminal adjustments do not apply.

f)  The advisory guideline range resulting from these calculations is 51-63 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 51 months (bottom of Category I) to 125 months (top of Category VI).  The guideline range would not exceed, in any

case, the cumulative statutory maximums applicable to the counts of conviction.

g)  Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $20,000 to $ 200,000, plus applicable interest and penalties.

h)  Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term shall be at least 1 year, but not more than 3 years.

i)  The defendant agrees to restitution in an amount to be determined at sentencing.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement,

. . . .

. . . .

. . . .

. . . .

. . . .

neither the government nor the defendant has relied, or is relying, on any other

terms, promises, conditions or assurances.

Date: 4/27/23

_____
DARION SEXTON
Defendant

Date: 4/27/23

_____
Jamie Hubbard
Attorney for Defendant

Date: 5/4/23

_____
Bryan David Fields
Assistant U.S. Attorney

Date: 5/4/23

_____
Maura White
Trial Attorney