IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   1:23-cr-00118-NYW

UNITED STATES OF AMERICA,

     Plaintiff,

v.

DARION RAY SEXTON,

     Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

---

The United States (the Government) respectfully submits its sentencing memorandum as to defendant Darion Ray Sexton (the defendant). The defendant pleaded guilty to one count of violating the Church Arson Prevention Act under 18 U.S.C. § 247(a)(1). (Dkt. 28). Specifically, the defendant admitted that between January 19, 2023, and January 20, 2023, he approached the Victim Church and threw two Molotov cocktails at its front door, causing a fire. *Id*. at 7. Further, as part of the plea agreement, the defendant stipulated and agreed that he attacked the Victim Church because of its religious character and with the intent to destroy it. *Id*. at 8.

The Pre-Sentence Report (Dkt. 34, hereinafter "the PSR") correctly determined that the defendant's total offense level was 24 and that his Guideline Imprisonment Range (Guideline range) is 51 months to 63 months in prison. (PSR ¶¶ 40 & 94). As stated in the plea agreement (Dkt. 28 at 2), and for the reasons below, the

1

Government submits that a sentence of imprisonment at the bottom-end of the applicable Guideline range, three years supervised release, a special assessment of $100, and restitution to the Victim Church and the Loveland Fire Department, is warranted to hold the defendant accountable for his premeditated and brazen attack on the Victim Church and to meet the goals of sentencing expressed in 18 U.S.C. § 3553(a) (the Recommended Sentence).

## I. The defendant pleaded guilty to a hate crime and is scheduled to be sentenced on January 23, 2024

On January 23, 2023, a criminal complaint was filed charging the defendant with a single count of arson in violation of 18 U.S.C. § 844(i). (Dkt. 1). On May 4, 2023, the defendant pleaded guilty to an Information charging him with violating the Church Arson Prevention Act under 18 U.S.C. § 247. (Dkts. 18, 27 & 28). This Court scheduled the defendant's sentencing hearing on January 23, 2024. (Dkt. 33). On December 19, 2023, the United States Probation Office (Probation) issued its PSR as to the defendant. (Dkt. 34). On January 2, 2024, the defendant filed an objection to the PSR that does not dispute the Probation Office's Sentencing Guideline calculation or the amounts of restitution. (Dkt. 35). The Government has no objections to the PSR.

## II. The defendant went on a self-described "anti-religion bender" that resulted in an attempt to burn down a church with two homemade incendiary devices

The following supplements the factual basis that the defendant signed as part of his plea agreement in this case (Dkt. 28 at 5-8), and includes information and

2

findings obtained from the Loveland Police and Fire Departments, the Federal Bureau of Investigation (FBI), and the Bureau of Alcohol, Tobacco, Fire, and Explosives (ATF).

The Victim Church, located in Loveland, Colorado, was a church within the Wisconsin Evangelical Lutheran Synod (WELS). WELS is the third-largest Lutheran Church body in the United States, with congregations in all fifty states and several foreign countries. The Victim Church owned a building in Loveland and operated in interstate commerce, purchasing items for its religious services from out of state, selling merchandise as part of fund-raisers, gathering donations from its congregation, and hosting weddings and other events. The building, pictured below, was a religious place accessible to and open to members of the public periodically and occasionally and was thus a place of public use.



3

At approximately 9:00 p.m. on January 19, 2023, the defendant used Snapchat to send a friend a video selfie in which he stated, "Yeah, I might go set a church on fire." The friend responded, "isn't that a hate crime." The defendant did not respond. Instead, about two and a half hours later, the defendant walked from his residence to the front entryway of the Victim Church. There, a doorbell camera on the front door captured the defendant, wearing a light-colored sweatshirt and pants and light-colored shoes, with his face obscured, throwing a "Molotov cocktail,"[1] a destructive device that the defendant made out of an empty bottle of Admiral Nelson Watermelon Rum stuffed with strips of denim from an old pair of jeans and filled with gasoline.



Video surveillance from the doorbell camera shows that the Molotov cocktail bounced off the front door of the Victim Church without breaking. The defendant then

---

[1] The term "Molotov cocktail" is colloquially used to refer to a "crude hand grenade made of a bottle filled with a flammable liquid (as gasoline) and fitted with a wick or saturated rag taped to the bottom and ignited at the moment of hurling." *United States v. Ross*, 458 F.2d 1144, 1145 n.2 (5th Cir. 1972).

picked the Molotov cocktail up and again threw it at the front door.



This time, the bottle shattered and engulfed the front door in flames.



The defendant threw another Molotov cocktail into the basement of the Victim Church. To access the basement, he first threw another empty bottle of Admiral Nelson Watermelon Rum at an access window. After that window broke, he threw a plastic bottle, filled with gasoline, and stuffed with more ripped denim, into the basement after lighting the denim on fire.

5

The Loveland Police and Fire Departments were dispatched at approximately 11:56 p.m. to a reported structure fire at the Victim Church. When they arrived, the investigators saw and extinguished an active fire at the front door. After entering the inside of the Victim Church, they observed that the second fire in the basement had been extinguished by emergency sprinklers. Investigators then surveyed the damage to the Victim Church. They recovered the broken glass from a rum bottle at the front door of the church, which smelled like gasoline.



The outer pane of glass from the front door was broken, and there was smoke staining to the brick wall and doorframe. There was thermal damage consisting of melting to the rubber door sweep and composite material that comprised the door threshold.



The fire in the basement caused smoke staining to the concrete foundation wall and thermal damage to the wood framing of the basement window. A barred window on the northwest side of the building was broken.



There was thermal damage, consisting of charring, to message boards and a

7

pop-up canopy stored in the basement.



A broken rum bottle was located on the basement floor. Fragments from this bottle did not appear to have sustained any fire damage or discoloration.



Additionally, a partially melted plastic bottle, which smelled like gasoline, was recovered from just inside the basement window.



Outside the Victim Church, investigators observed footprints in the snow. They followed these footprints from the Victim Church to the defendant's residence. The tread of those 11-inch footprints matched shoes later recovered from the defendant's home and the defendant later admitted that the footprints were his.



Later that day, the FBI executed a search warrant at the defendant's home and seized the paraphernalia used to set the fire at the Victim Church, including shredded denim jeans, shoes matching the thread pattern in the snow, and a butane lighter. During a voluntary interview with the FBI that day, the defendant admitted to walking outside during the time of the fire but lied about setting it.

The FBI also executed a search warrant on the defendant's cellular phone. A review of the defendant's cellular phone showed multiple videos where the defendant discussed the arson and his plans to go back if he was unsuccessful: "I took a literal bottle, and I used the bottle to break the basement glass. Like I shattered that shit.

And then I threw the Molotov cocktail in the basement. So, we'll find out in the morning if that shit burned down. If not, I'm tryin' again tomorrow." *See* Exhibits 1 and 2. The defendant also stated that he committed the arson "[b]ecause, for some reason, I'm like on an anti-religion bender right now." *See* Exhibit 3. He also described his plan to collect a "Gatorade bottle worth of gasoline. And I'm gonna put it at the base of the church. And then I'm gonna put a Molotov cocktail on the front entrance… [en]gulf, the entire church, hopefully. Tonight, well, in the morning we'll see how successful my efforts were tonight, but it's a 50/50." *See* Exhibits 4-6.

Finally, investigators obtained surveillance video footage from a local liquor store that shows the defendant purchasing two bottles of Admiral Nelson's Premium Watermelon Rum—the same bottles that were found at the scene of the Church—two days prior to the arson.



Receipts and credit card statements show that the defendant used his stepfather's credit card to buy the two bottles.

As a result of the fire that the defendant set at the Victim Church, it sustained damage in the amount of $3,962.93, which includes: (1) $816.40 for the sprinkler replacement and system recharge; (2) $1,348.36 to board up the door windows prior to their replacement; (3) $1,715.73 to replace the door and basement windows; and (4) $82.44 to replace the outdoor mats. Prior to the arson, the Victim Church did not have a security system other than the doorbell camera. Following the arson, the Victim Church purchased a new security system in the amount of $4,975. It cost the Loveland Fire Department (LFD) $3,514.24 to respond to this fire, which included money spent to send (1) four fire engines; (2) a tower truck with a ladder; (3) one rescue vehicle; and (4) multiple firefighters not already on duty to the scene to extinguish the fire that the defendant caused. *See* Exhibits 7-8. LFD calculated the cost of manpower to be $725.38 for off-duty personnel called to respond to the fire. *See* Exhibit 8. LFD calculated the cost for the fire engines, tower truck, and rescue vehicle to be $2,788.86, which includes costs associated with wear and tear to the vehicles and equipment. *See* Exhibits 7 and 8. These costs were calculated based on the standard rates used in Colorado to reimburse fire departments for cost associated with responding to fires, such as wildfires. *See* Exhibit 8. These costs were incurred because of LFD's response to the fire that the defendant set. *Id.*

## III. The United States Sentencing Guidelines recommend 51-63 months' imprisonment

The PSR correctly concludes that the total offense level for the defendant's violation is 24. PSR at ¶ 31. The defendant did not file an objection this calculation. At Offense Level 24 and Criminal History Category I, the recommended sentence is 51 months to 63 months imprisonment. *Id.* at ¶ 40 & 94.

The PSR also correctly calculated (1) the mandatory and discretionary restitution owed to the Victim Church, in the amounts of $3,962.93 and $4,975 respectively, for a total of $8,937.93; and (2) the discretionary restitution owed to LFD in the amount of $3,514.24. The defendant did not file an objection to any of these figures.

## IV. A 51-month sentence is sufficient but not greater than necessary to accomplish the goals of criminal justice set for at 18 U.S.C. § 3553(a).

The Recommend Sentence is sufficient, but not greater than necessary, to vindicate the goals of criminal justice set forth at 18 U.S.C. § 3553(a).

### a. The nature, circumstances, and seriousness of the offense fully justify the recommended sentence (18 U.S.C. §§ 3553(a)(1) & (a)(2)(A)).

The defendant attacked a peaceful worship community in a brazen act of violence that he hoped would result in complete destruction of the Victim Church and the congregation's displacement. As evidenced by the statements that the defendant made to a friend in the hours before the arson, the videos on the defendant's phone, and the materials found inside his home, there is no doubt that he planned to burn down the Victim Church. There is also no doubt that the defendant planned to go

13

back the next day to finish the job if his first attempt was unsuccessful. The defendant admitted that he targeted the Victim Church because of its religious character and the video on his cell phone where he talks about being on an "anti-religion bender" further demonstrate his intent.

But this wasn't just an attack on a building. It was an attack on a community that now lives in fear and anxiety. One member of the congregation relayed that he no longer feels safe volunteering at the church after hours to update its financial records. Another relayed how a place of joy, refuge, and comfort had turned into something else:

> I directed my daughters to move to an inner room, the kitchen of the church, and duck down where they couldn't be seen from the windows.  I told them to be quiet and not to move.  They were terrified.  We were in our Lord's house, a place of grace and safety, and they were scared.  A place that had always been a second home to them, was now forever changed.   That conversation with my children was one I never in my wildest dreams could have imagined and one that I hope to never have again. I was angry and we were all scared.  The man we saw was an innocent neighbor out walking his dog, curious about the events so many had seen on the news about the attack on our church.

The defendant's conduct was premeditated. It is precisely the kind of conduct that Congress sought to address when it passed the Church Arson Prevention Act and precisely the kind of conduct that justifies a significant jail sentence.

**b. The Recommended Sentence promotes respect for the law, provides for general deterrence, provides just punishment, and protects the public (18 U.S.C. §§ 3553(a)(2)(A), (B), and (C).**

The Recommended Sentence will promote respect for the law. It will send a

clear message that those who attack houses of worship and the constitutional right to freely practice religion will be prosecuted and held fully accountable for criminal conduct that strikes at core American values. A deviation from that sentence in this case would send the message that trying to burn down the Victim Church does not deserve the sentence that the Sentencing Commission has determined to be the just punishment in all similar cases.

Moreover, a sentence of imprisonment is just. Defendants who have similarly attacked houses of worship have often received even higher sentences. *See United State v. Sechriest*, No. 1:22cr53 (W.D. Tex. Dec. 12, 2023) (following a guilty plea, the court varied upward and sentenced the defendant to 120 months imprisonment for setting fire to a synagogue in violation of 18 U.S.C. §§ 247(c) & 844(i)); *United States v. Ruckel*, No. 23cr58 (S.D. Ohio Aug. 29, 2023) (defendant sentenced to 60 months' probation for setting fire to a church in violation of 18 U.S.C. § 247(a)(1) after a guilty plea); *United States v. Proffitt*, No. 20cr63 (E.D. Mo. Aug. 2, 2023) (defendant pleaded guilty to violations of 18 U.S.C. §§ 247(a)(1) & 844(h)(1) and was sentenced to 71 months and 120 months imprisonment respectively to be served consecutively); *United States v. Fox*, No. 21cr196 (M.D. Tenn. May 6. 2022) (defendant pleaded guilty to a five-count information charging him with four violations of 18 U.S.C. § 247(a)(1) and one violation of 18 U.S.C. § 924(c) involving four church arsons, and was sentenced to 26 months for the § 247 violations to be served consecutively to his sentence of 60 months imprisonment for the § 924(c) violation); *United States v.*

*Matthews*, No. 19cr183 (W.D. La. Nov. 5, 2020) (defendant pleaded guilty to committing arsons at three different churches and was sentenced to 180 months imprisonment for the violations of 18 U.S.C. § 247(a)(1) to be served consecutively to 120 months imprisonment for violating 18 U.S.C. § 844(h)(1)).

The Recommended Sentence also protects the public from further crime. Although the defendant has no criminal history, his conduct was premeditated, and he planned to return to the Victim Church to set fire to it if his first attempt was unsuccessful. The defendant's disregard for the safety of the Victim Church community or the surrounding area, which in Colorado's dry climate is vulnerable to devastating wildfires, underscores the danger that he poses to the public. Imposing the Recommended Sentence here would send a clear message to the defendant that acting on his anti-religious thoughts in the future will be met with harsh penalties. It would also comfort and calm an anxious community by protecting them from the defendant for the period of his incarceration.

### c. The Recommended Sentence takes into account the defendant's unique personal circumstances and history (18 U.S.C. § 3553(a)(1)).

As chronicled above, the Recommended Sentence here is much lower than sentences imposed on other church arsonists. The government expects the defendant to file his own sentencing memorandum, discussing his personal circumstances and history. If the defendant also moves for variant sentence downward, the government will respond in more detail. For now, the government emphasizes that its

16

recommendation of 51 months imprisonment was not reached lightly and that it fully balances the seriousness of the crime against any mitigating history.

### d. The Defendant Should Be Ordered to Pay All Mandatory and Discretionary Restitution.

Finally, the Government submits that the defendant be ordered to pay all mandatory and discretionary restitution pursuant to 18 U.S.C. §§ 3663A & 3663. With respect to restitution to the Victim Church, the defendant agreed "to be liable for restitution to VICTIM CHURCH in an amount to be determined at sentencing" (Dkt. 28 at 2), so the Government submits that the defendant should be ordered to pay mandatory and discretionary restitution to the Victim Church in the amount of $8,937.93. Further, as part of the plea agreement, the defendant also agreed "to restitution in an amount to be determined at sentencing," (Dkt. 28 at 11) and the Government asks this Court to order him to pay LFD restitution in the amount of $3,514.24. LFD spent money to send multiple firefighters, fire engines, a tower truck, and a rescue vehicle to the scene to extinguish the fire that the defendant caused. As described above, this includes the costs associated with sending on-duty and off-duty personnel to the scene and the cost of wear and tear to the vehicles that responded to the fire. These costs would not have been incurred but for the defendant's actions in this case and LFD should be paid restitution in the amount requested. Such an order would be consistent with other circumstances where a fire department responded to a crime. *See Sawyer v. United States*, 2009 WL 960687, \*2 (E.D. Va. April 8, 2009) (discussing the defendant having been convicted of a violation of 18 U.S.C. § 844(i)

17

and ordered to pay $321.13 in restitution to the responding fire department). Therefore, the Government respectfully requests this Court order the defendant to pay the full amount of mandatory and discretionary restitution to the Victim Church and LFD in the amount of $12,452.17.

## V.   Conclusion

Based on the factors set forth in 18 U.S.C. § 3553 and consistent with the terms of the plea agreement, the Government respectfully requests that this Court sentence the defendant to a term imprisonment at the bottom-end of the Guideline Range, three years supervised release, a special assessment of $100, and order the defendant to pay restitution to the Victim Church and the Loveland Fire Department.

Respectfully submitted,

COLE FINEGAN
United States Attorney
District of Colorado

KRISTEN CLARK
Assistant Attorney General
Civil Rights Division

By:   *s/ Bryan David Fields*
Bryan David Fields
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: Bryan.Fields3@usdoj.gov

By:   *s/ Maura Deady White*
Maura Deady White
Trial Attorney
Civil Rights Division
950 Pennsylvania Avenue, N.W., 4CON
Telephone: (202) 532-3827
Email: Maura.White@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 9, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

                            *s/ Bryan David Fields*
                            United States Attorney's Office